# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| CLARENCE WESLEY, |
| Plaintiff, |
| v. |
| GEORGETOWN UNIVERSITY, |
| Defendant. |

Civil Action No. 18-1539 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff Clarence Wesley, an African-American male, claims that his employer, Georgetown University, a private university located in Washington, D.C., subjected him "to a hostile work environment because of his race and because of his engagement in protected activity," and retaliated against him for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), *see* 42 U.S.C. §§ 2000e *et seq.* Compl. ¶¶ 1–3, 10, 21, 24, ECF No. 1-1. The defendant has moved to dismiss the Complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. Def.'s Mot. to Dismiss the Compl. ("Def.'s Mot."), ECF No. 6. For the reasons discussed below, the defendant's motion will be granted, without prejudice.

## I.  BACKGROUND

The plaintiff has been employed in the defendant's Facilities Department since 2001, and alleges that he is a "well respected member of the University community" and has received "high praise for his work." Compl. ¶¶ 6, 7. On January 27, 2014, Mark Sciarratta, a Caucasian male, became the Director of Facilities Management, *id.* ¶¶ 8, 11, and over a year and a half later, on September 15, 2015, Pedro Alvarez, a Hispanic male, became leader of the "Academic Zone

1

Team," *id*. ¶¶ 9, 11.[1] The plaintiff alleges that "[s]ince Mr. Alvarez was appointed leader, there has been a breakdown in communication between management and employees." *Id.* ¶ 12. Specifically, the plaintiff alleges that "Hispanic employees are notified about overtime opportunities first . . . [giving them] greater access to these opportunities," and "Hispanic employees are not subject to the same disciplinary measures as non-Hispanics." *Id.*

On July 2, 2015, Mr. Sciarratta and Mr. Alvarez accused the plaintiff "of stealing [overtime] hours," even though "he had pre-approval from Mr. Alvarez" to work three hours of overtime. *Id*. ¶ 13. Shortly thereafter, on July 21, 2015, the plaintiff filed a Title VII discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC), alleging discrimination by the defendant based on race because of the "preferential treatment of Hispanic employees regarding overtime and communication from management." *Id.* ¶ 14. *See also* Compl., Ex. B, U.S. Equal Employment Opportunity Commission Determination ("EEOC Determination"), at 13–14, ECF No. 1-1.

On August 21, 2015, a month after the plaintiff filed his initial EEOC complaint, the plaintiff and a Hispanic co-worker, Hector Coreas, "equally engaged in an argument." Compl. ¶¶ 15, 24; EEOC Determination at 13. As a result of this incident, the plaintiff was put on administrative leave on September 16, 2015, but Mr. Coreas received no punishment. *Id.* ¶ 16. Mr. Sciarratta was responsible for the investigation and disciplinary action related to this incident. *Id.* ¶ 17.

---

[1] As the defendant notes, based on the timing of the plaintiff's allegations, the September 2015 date may be a typographical error. *See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 2 n.2, ECF No. 6-1. For purposes of resolving this motion, and to give the plaintiff the benefit of all inferences, the Court will assume that the plaintiff intended to indicate that Mr. Alvarez became a leader in September 2014.

The plaintiff notified the EEOC of the argument with Mr. Coreas and the resulting punishment, *id.* ¶ 18, and relayed his belief that he was disciplined for the altercation in retaliation for his earlier complaint regarding preferential treatment, *id.*

On December 1, 2017, the EEOC issued the results of its investigation finding that the verbal altercation on August 21, 2015 "was initiated by Mr. Coreas," and that the defendant nonetheless disciplined the plaintiff, on September 16, 2015, by issuing "a disciplinary warning and place[ment] on administrative leave," "but Mr. Coreas was not" disciplined. EEOC Determination at 13. The Acting Director of the EEOC's Washington Field Office stated that "[b]ased on the foregoing, I have determined that [the defendant] violated Title VII by disciplining [the plaintiff] due to his race and in retaliation for his engaging in protected activity." *Id.* at 14; Compl. ¶ 19. The EEOC made "no findings" regarding the plaintiff's "remaining allegations," evidently referring to the plaintiff's allegation about "preferential treatment of Latino employees with regards to overtime and management communications on work assignments." EEOC Determination at 13–14. The EEOC invited the parties "to eliminate the alleged unlawful practices by informal methods of conciliation," *id.* at 14, but the defendant declined to settle and, on January 10, 2018, the EEOC granted the plaintiff a right to sue under Title VII. Compl., Ex. A, EEOC Not. Right to Sue, at 11, ECF No. 1-1.

On April 6, 2018, the plaintiff filed the instant Complaint in the Superior Court of the District of Columbia, and the defendant timely removed this action to this Court. *See* Compl. at 1; Notice of Removal to Federal Court, ECF No. 1; Notice to Counsel, ECF No. 4. The Complaint asserts two causes of action: one claim for subjecting the plaintiff to a hostile work environment, and one claim for retaliation. As factual support for his hostile work environment claim, the plaintiff alleges that the defendant's "[m]anagement has created an environment that

favors Hispanic employees over other employees by informing them about overtime opportunities first and exposing other [non-Hispanic] employees to more strict discipline for the same or similar infractions." Compl. ¶ 22. As support for the retaliation claim, the plaintiff alleges that the defendant retaliated against the plaintiff for engaging in the protected activity of filing a discrimination complaint when it placed the plaintiff on administrative leave following the altercation with Mr. Coreas, who was subject to no discipline. *Id.* ¶¶ 14, 16, 24.[2]

The defendant now moves to dismiss the Complaint, with prejudice, arguing that the plaintiff's claims of hostile work environment and retaliation fail as a matter of law, and that the plaintiff fails to plead facts that would support a claim for race discrimination, Def.'s Mot. at 1, which motion is now ripe for review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original; internal quotation marks omitted). The Supreme Court has cautioned that although "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, [ ] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).[3]

---

[2] The Complaint does not mention that the plaintiff also received a disciplinary warning, in contrast to the EEOC's summary of the events. *Compare id.* ¶¶ 16, 24, *with* EEOC Determination at 13.

[3] The plaintiff suggests that the defendant's citations to *Iqbal* and *Twombly* are "inapplicable" because they are "both complex decisions, and *Twombly* involves antitrust issues." Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 4, ECF No. 10. To the contrary, the Supreme Court expressly stated that "[o]ur decision in *Twombly* expounded the pleading standard for 'all civil actions.'" *Iqbal*, 556 U.S. at 684 (quoting Fed. R. Civ. P. 1). Accordingly, no complaint can survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Of course, in the employment discrimination context, "the precise requirements of a prima facie case can vary

4

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556–57); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action" to provide "grounds" for "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (internal quotation marks omitted; alteration in original), and "nudge[ ] [the] claims across the line from conceivable to plausible," *id.* at 570; *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully.") (internal quotation marks omitted). Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (second alteration in original).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construe all reasonable inferences in favor

---

depending on the context." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *see also Gordon v. U. S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015) (noting that "*Twombly* actually reaffirmed *Swierkiewicz*"). While the D.C. Circuit has since clarified that "at the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case," *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (internal quotation marks and alteration omitted), the plaintiff must still allege sufficient facts "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* (quoting *Iqbal*, 556 U.S. at 678).

of the plaintiff. *See Twombly*, 550 U.S. at 555; *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam) ("We assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in the plaintiff's favor." (citing *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014))). The Court, however, "is not required to accept the plaintiff's legal conclusions as correct," *Sissel*, 760 F.3d at 4, nor is it required to "accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Nurriddin*, 818 F.3d at 756 (alterations in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Finally, while "matters outside the pleadings" generally may not be considered, without converting the motion to one for summary judgment, Fed. R. Civ. P. 12(d), a court deciding a motion brought under Rule 12(b)(6) may, without triggering the conversion rule, consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

## III.  DISCUSSION

The plaintiff accuses the defendant of violating Title VII by creating a hostile work environment and by retaliating against him for filing a discrimination complaint with the EEOC. Both of these claims may constitute "an unlawful employment practice," under Title VII, which bars discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and discrimination against an individual because that individual has opposed an unlawful employment practice or made a charge or otherwise participated in an

6

investigation, proceeding, or hearing under Title VII, *id*. § 2000e-3(a). Each claim is addressed in turn.

## A. Hostile Work Environment Claim

"In determining whether an actionable hostile work environment claim exists, [the Court] look[s] to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted). A plaintiff fails to establish a hostile work environment claim where the conduct "is not severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundownder Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks omitted). Where the plaintiff's complaint lacks allegations of behavior "so objectively offensive as to alter the conditions of [his] employment," dismissal is appropriate. *See id.* "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1995) (internal citations omitted). In addition, the plaintiff must establish a causal connection between the harassment he experienced and his protected status. *See Oncale*, 523 U.S. at 80–81. The D.C. Circuit has cautioned that "not all abusive behavior, even when it is motivated by discriminatory animus, is actionable." *Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. 2002) (internal quotation marks omitted). Finally, "a plaintiff may not combine discrete acts to form a hostile

work environment claim without meeting the required hostile work environment standard."
*Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

The defendant argues that the plaintiff's hostile work environment claim fails because he has not alleged that he was subjected to severe or pervasive intimidation and ridicule based on his race and because the claim is based on discrete acts that cannot support a hostile work environment claim as a matter of law. Def's Mem. at 1. The Court agrees that this claim is so spare that dismissal is warranted.

The plaintiff alleges that once a Hispanic supervisor was hired, non-Hispanic employees were given less notice of overtime opportunities than Hispanic employees and were subject to stricter discipline than Hispanic employees. Compl. ¶ 22; *id*. ¶ 12. Focusing first on the plaintiff's allegations regarding notice of overtime opportunities, the plaintiff has not alleged sufficient facts to establish that this management practice was equivalent to "discriminatory intimidation, ridicule, and insult" so "severe or pervasive" that it altered his workplace so as to create an abusive environment. *Harris*, 510 U.S. at 21. The plaintiff relies on the conclusory statement that "[s]ince Mr. Alvarez was appointed leader. . . . Hispanic employees are notified about overtime opportunities first." Compl. ¶ 12. At no point does the plaintiff attempt, within his scant, three-and-a-half page Complaint (not including exhibits), to explain how often overtime opportunities arise, how employees were notified of them in the past, how that practice has changed, what effect the denial of overtime opportunities has on him or other non-Hispanic employees, or what basis, aside from his own speculation, the plaintiff has for believing that he is being denied notice of overtime opportunities because of his race. This information, or something approaching it, is necessary to allow the Court to look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its

8

offensiveness, and whether it unreasonably interferes with an employee's work performance in order to determine whether the plaintiff has sufficiently alleged the facts to support a hostile work environment claim. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 116. Lacking those facts, the plaintiff's allegations that a hostile work environment existed because non-Hispanic employees received less notice of overtime opportunities fails. Moreover, even though he is not Hispanic, the plaintiff alleges that he was approved for overtime work, Compl. ¶ 13, which undercuts the claim about overtime work opportunities only being assigned to Hispanic employees.

Although the plaintiff's claim that non-Hispanic employees receive harsher discipline than Hispanic employees is better supported than his claim regarding overtime opportunities, the plaintiff nevertheless fails to establish a hostile work environment claim on that basis as well. The plaintiff alleges two examples in support: (1) he was accused of stealing overtime hours when in fact he had pre-approval, Compl. ¶ 13; and (2) after he and a Hispanic co-worker, Mr. Coreas, got in a verbal altercation, he was disciplined whereas Mr. Coreas was not. *Id.* ¶¶ 15, 16, 24. These are the sole examples the plaintiff provides of discriminatory disciplinary practices at his workplace. These examples, together with his conclusory statement that "Hispanic employees are not subject to the same disciplinary measures as non-Hispanics," *id.* ¶ 12, are neither pervasive enough nor adverse enough to give rise to a hostile work environment claim. *See Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011) (rejecting plaintiff's effort to transform amalgamation of disparate treatment claims into cause of action for hostile work environment for lack of connection to pervasive pattern of severe harassment); *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 103–04 (D.D.C. 2010) (plaintiff cannot establish severe and pervasive discriminatory intimidation or insult by pointing to isolated incidents).

"Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115; *see also Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment.").

To the extent that the plaintiff alleges he was subject to a hostile work environment in retaliation for his discrimination complaint, *see* Compl. ¶ 21, the only example of discriminatory action he alleges occurred *after* he filed his initial EEOC complaint on July 21, 2015 is the discipline he received following his verbal altercation. *See id.* ¶¶ 14–16. This Court has already concluded that this action, when combined with other alleged discriminatory actions, was insufficient to establish that the plaintiff was subject to "discriminatory intimidation, ridicule, and insult of such severity or pervasiveness as to alter the conditions of his employment and create an abusive working environment." *Hussain v. Nicholson*, 435 F.3d 359, 366–67 (D.C. Cir. 2006) (discussing the elements of a retaliatory hostile work environment claim). It therefore follows that this action standing alone fails to establish a retaliatory hostile work environment claim. *Cf. Touvian v. District of Columbia*, No. 17-cv-1818 (DLF), 2018 WL 4286405, *4 n.4 (D.D.C. Sept. 7, 2018) (noting some tension in the standard for a retaliatory hostile work environment claim, given that a broader range of actions may qualify as materially adverse actions in a retaliatory context but the "severe or pervasive" standard from hostile work environment claims still must be met); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 79–83 (D.D.C. 2013) (same).

The plaintiff's Complaint, including the materials incorporated by reference within it, fails to support the plaintiff's hostile work environment claim, whether that claim is based on

race or on retaliation. The defendant's motion to dismiss the plaintiff's hostile work environment claim is therefore granted.[4]

### B. Retaliation Claim

Title VII forbids an employer from retaliating against an employee because the employee engaged in protected activity by opposing unlawful employment practices or by bringing discrimination charges under Title VII. *See* 42 U.S.C. § 2000e-3(a). To establish an unlawful retaliation claim, the plaintiff must show: (1) that he made a charge or opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action because of the plaintiff's protected conduct. *Allen v. Johnson*, 795 F.3d 34, 38–39 (D.C. Cir. 2015). A causal relationship between a materially adverse action and protected activity may be inferred through temporal proximity between the protected act and the adverse employment action or through disparate treatment of similarly situated employees. *See Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015); *Taylor v. Solis*, 571 F.3d 1313, 1322–23 (D.C. Cir. 2009).

In the retaliation context, a materially adverse action is one that might "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). As the D.C. Circuit has explained, "[a]dverse

---

[4] Although the plaintiff did not himself frame the issue in this manner, the Court, like the defendant, will consider whether the plaintiff's Complaint asserts a claim of race discrimination, as part of his hostile work environment claim in the First Cause of Action. *See* Compl. ¶¶ 20–22; Def.'s Mem. at 1–2, 6. To establish such a claim, the plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *See Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (per curiam). Evidence demonstrating that the plaintiff and a similarly situated person were treated disparately may support an inference of discrimination. *See Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006). An adverse employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing [a] significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks omitted). The adverse actions the plaintiff alleges: denial of overtime opportunities, one false accusation of stealing time, and discipline following an investigation into a work-related altercation, do not meet this standard. Therefore, his Complaint fails to establish a discrimination claim based on race.

actions in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). "[A]ctions giving rise to [retaliation] claims are 'not limited to discriminatory actions that affect the terms and conditions of employment.'" *Baird*, 662 F.3d at 1249 (quoting *Burlington N.*, 548 U.S. at 64). At the same time, however, Title VII protects individuals "not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N.*, 548 U.S. at 67. Thus, the D.C. Circuit has indicated that work-related retaliation must have "tangible job consequences" in order to qualify as materially adverse. *See Taylor*, 571 F.3d at 1321 (quoting *Baloch*, 550 F.3d at 1199); *see also Walker*, 798 F.3d at 1095 ("[T]he question is whether . . . retaliation caused a significant, tangible harm."); *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (defining materially adverse actions as those that demonstrate an objectively tangible harm). In *Baloch*, for example, the D.C. Circuit held that a letter of counseling, a letter of reprimand, and an unsatisfactory performance review were not materially adverse actions under the retaliation standard because the letters "contained no abusive language, but rather job-related constructive criticism," and "performance reviews typically constitute adverse actions only when attached to financial harms." 550 F.3d at 1199. The Court concluded that the plaintiff, on summary judgment, had failed to "produce evidence showing that the . . . negative performance evaluation could affect his position, grade level, salary, or promotion opportunities." *Id.*

Actions that result in objectively tangible harm are certainly more likely to dissuade a reasonable worker from pursuing a claim than "petty slights, minor annoyances, and simple lack of good manners." *Burlington N.*, 548 U.S. at 68. Yet "the significance of any given act of retaliation" and therefore its potential to deter discrimination complaints, "will often depend on the particular circumstances." *Id.* at 69. The D.C. Circuit recognized as much when it held that

ostracizing an employee because she filed a discrimination complaint may constitute a materially adverse action even if no tangible harm results. *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1165–66 (D.C. Cir. 2010) (applying Title VII standards to an Americans with Disabilities Act claim).

The plaintiff in the instant action claims that the defendant retaliated against him by: (1) placing him on paid administrative leave following his verbal altercation with Mr. Coreas; (2) giving him a disciplinary warning for the verbal altercation with Mr. Coreas; (3) taking those two actions against him but taking no action against Mr. Coreas, who was found by the EEOC to have started the altercation; and (4) that this disparity in treatment was because of the plaintiff's race and because the plaintiff had previously filed a workplace discrimination complaint. *See* Compl. ¶¶ 16, 18, 19, 24; EEOC Determination at 13–14.[5]

The defendant argues that the plaintiff's retaliation claim fails both because he cannot allege that he was subject to an adverse action and because he cannot show a causal link between his alleged protected activity and the adverse action. Def.'s Mem. at 1. As to the first point, the defendant posits that being placed on paid administrative leave cannot constitute an adverse action for purposes of Title VII because no objectively tangible harm results from such leave. *See id.* at 5 (citing *Hornsby v. Watt*, 217 F. Supp. 3d 58, 65 (D.D.C. 2016); *Jones v. Castro*, 168 F. Supp. 3d 169, 180–81 (D.D.C. 2016)).

---

[5] The EEOC's determination that the plaintiff was disciplined due to his race and in retaliation for engaging in protected activity, EEOC Determination at 14, may be considered in evaluating, but is not dispositive of, whether the plaintiff's retaliation claim survives a motion to dismiss, since that determination is not binding on the Court. *See Nat'l Org. for Women, N.Y.C. Chapter v. FCC*, 555 F.2d 1002, 1018 n.102 (D.C. Cir. 1977); *accord Alford v. Providence Hosp.*, 60 F. Supp. 3d 118, 126 (D.D.C. 2014) ("[I]t is the facts of [defendant's] alleged discrimination—not the EEOC's view of the evidence—that gives rise to [plaintiff's claim]."); *Hodge v. United Airlines*, 821 F. Supp. 2d 180, 197 (D.D.C. 2011) (collecting cases for the proposition that EEOC determinations are not binding in collateral Title VII civil actions).

Contrary to the defendant's position, penalizing an employee by placement on administrative leave may amount to an adverse action in the retaliation context. Both *Hornsby* and *Jones,* which were relied upon by the defendant, concerned employees who were placed on paid administrative leave while an investigation was ongoing, rather than as punishment for a concluded investigation, as alleged here. *See Hornsby*, 217 F. Supp. 3d at 66–67 (employee challenged his employer's failure to reinstate him from administrative leave immediately following his acquittal of criminal charges while an internal investigation continued); *Jones*, 168 F. Supp. 3d at 179 (plaintiff was on paid administrative leave while an investigation was ongoing). Indeed, what the defendant claims is a "near-universal consensus," Def.'s Mem. at 5 (quoting *Hornsby*, 217 F. Supp. 3d at 65), among the circuit courts that paid administrative leave does not constitute materially adverse action for the purposes of a retaliation claim is simply inapplicable to this case: the cases forming that consensus involved leave pending an investigation, not leave as punishment following an investigation. *See, e.g.*, *Joseph v. Leavitt*, 465 F.3d 87, 90–93 (2d Cir. 2006) (collecting cases of this nature); *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015). On the other hand, the Ninth Circuit, in the context of a free speech retaliation claim, found that being placed on administrative leave could, in some contexts, be considered adverse action. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1078–79 (9th Cir. 2013) (en banc). The D.C. Circuit, when affirming *Hornsby* in an unpublished opinion, expressly left open the question of whether being placed on administrative leave could constitute the type of adverse action that would support a retaliation claim, *see* No. 17-5001, slip. op. at 2 (D.C. Cir. Nov. 14, 2017) (per curiam).

The defendant does not address the plaintiff's allegation that he also received a disciplinary warning as a result of his verbal altercation with Mr. Coreas. While this omission is

14

understandable given that no mention of the disciplinary warning is included in the Complaint itself, but only mentioned in the EEOC Determination, at 13, which is incorporated by reference, *see* Compl. ¶ 19, this allegation must be accepted as true for the purposes of ruling on the defendant's motion to dismiss. A disciplinary warning may constitute an adverse action that would dissuade a reasonable employee from pursuing a discrimination claim. *See Coleman v. Duke*, 867 F.3d 204, 215 (D.C. Cir. 2017) (remanding a district court's dismissal of a retaliation claim involving letters of counseling and reprimand and indicating that "the employee need only demonstrate that the employer's challenged action would have been material to a reasonable employee") (internal quotation marks and alteration omitted). *But see Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 282–83 (D.D.C. 2018) (holding, on a motion to dismiss, that a letter of counseling after an in-office argument was not a materially adverse action when plaintiff failed to connect it to any tangible harm).

Nonetheless, in this sparse complaint, the plaintiff alleges no facts demonstrating that receiving paid administrative leave and a disciplinary warning resulted in tangible, objective harm such that these actions were materially adverse. Basic facts such as how long the administrative leave lasted and what form the disciplinary warning came in, whether or how such actions are reflected in the plaintiff's employment record, and whether the actions affect any benefits or terms of employment would better enable the Court to infer whether the plaintiff had alleged materially adverse actions sufficient to state a retaliation claim. As it stands, even drawing every inference in the plaintiff's favor, he has not met his burden to establish that the challenged actions were materially adverse. *See Durant v. D.C. Gov't*, 875 F.3d 685, 697 (D.C. Cir. 2017) (the initial burden is on the plaintiff to establish that the challenged employment action was materially adverse); *Hornsby*, No. 17-5001, slip. op. at 2–3 (holding that the district

15

court did not err when it required the plaintiff to demonstrate objective, tangible harm at the motion to dismiss stage of a retaliation claim, because "the legal rule is the same at the motion to dismiss and summary judgment stages. . . . [the plaintiff] must show 'objectively tangible harm' to plausibly establish that a materially adverse action was taken against him").[6]

Ultimately, the plaintiff's Complaint, including the materials incorporated by reference within it, fails to allege sufficient facts to conclude that the disciplinary warning or paid administrative leave he received were materially adverse actions that would dissuade a reasonable employee from pursuing a discrimination claim. The defendant's motion to dismiss the plaintiff's retaliation claim is therefore granted.

## IV. CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss is GRANTED. The plaintiff's hostile work environment claim and retaliation claim are dismissed without prejudice. An appropriate order accompanies this Memorandum Opinion.

Date: November 2, 2018

_____
BERYL A. HOWELL
Chief Judge

---

[6] Having determined that the plaintiff has not alleged sufficient facts to show that he suffered a materially adverse action, the defendant's argument that the plaintiff failed to allege sufficient facts to suggest a causal relationship between his discrimination complaint and the discipline he received need not be addressed.